IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| DALE ALLEN McMILLAN, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| V. | § | CIVIL ACTION NO. H-18-0037 |
| | § | |
| ANDREW SAUL[1], COMMISSIONER | § | |
| OF THE SOCIAL SECURITY | § | |
| ADMINISTRATION, | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM AND ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Before the Court[2] in this social security appeal is Plaintiff's Motion for Summary Judgment

(Document No. 17) and Defendant's Cross Motion for Summary Judgment (Document No. 18).

Having considered the cross motions for summary judgment, each side's Response to the other's

Motion for Summary Judgment (Document Nos. 20 & 21), the administrative record, the written

decision of the Administrative Law Judge dated November 29, 2016, and the applicable law, the

Court ORDERS, for the reasons set forth below, that Plaintiff's Motion for Summary Judgment is

GRANTED, Defendant's Motion for Summary Judgment is DENIED, and this matter is

REMANDED to the Commissioner for further proceedings.

---

[1] On June 17, 2019, Andrew Saul became the Commissioner of the Social Security
Administration.

[2] On November 26, 2018, pursuant to the parties' consent, this case was transferred by the
District Judge to the undersigned Magistrate Judge for all further proceedings. *See* Document No.
11.

## I.    Introduction

Plaintiff Dale Allen McMillan ("McMillan") brings this action pursuant to Section 205(g) of the Social Security Act ("Act"), 42 U.S.C. § 405(g), seeking judicial review of a adverse final decision of the Commissioner of the Social Security Administration ("Commissioner") denying his claim for disability insurance benefits. McMillan raises five points of error in this appeal: (1) "The ALJ failed to properly evaluate the severity of all impairments in the record;" (2) "The ALJ failed to properly evaluate and weigh the medical opinions of record;" (3) "The ALJ's residual functional capacity finding is not supported by substantial evidence;" (4) "The ALJ's finding that Plaintiff retains the ability to perform his past relevant work as a security guard is not supported by substantial evidence and results from legal error;" and (5) "The ALJ's finding that Plaintiff retains the ability to perform other work existing in significant numbers in the national economy is not supported by substantial evidence and results from legal error." The Commissioner, in contrast, argues that there is substantial evidence in the record to support the ALJ's decision, that the decision comports with applicable law, and that the decision should be affirmed.

## II.    Procedural History

On July 8, 2015, McMillan applied for disability insurance benefits, claiming that he was unable to work since June 20, 2013, as a result of diabetes, arthritis, a neck injury, high blood pressure, back pain, joint pain, tinnitus, and thyroid problems.[3] The Social Security Administration

---

[3] In and around that time, McMillan also filed an application for supplemental security income benefits. That application is not at issue – McMillan having admitted during the administrative proceeding that he could not meet the income thresholds for supplemental security income benefits.

denied his application at the initial and reconsideration stages. After that, McMillan requested a hearing before an ALJ. The Social Security Administration granted his request and an ALJ, D'Lisa Simmons, held a hearing on September 15, 2016, at which McMillan's claims were considered *de novo*. (Tr. 35-76). On November 29, 2016, the ALJ issued her decision finding McMillan not disabled between his alleged amended onset date of June 10, 2014 and the date of her decision. (Tr. 10-21).

McMillan sought review of the ALJ's adverse decision with the Appeals Council. The Appeals Council will grant a request to review an ALJ's decision if any of the following circumstances are present: (1) it appears that the ALJ abused his discretion; (2) the ALJ made an error of law in reaching his conclusion; (3) substantial evidence does not support the ALJ's actions, findings or conclusions; or (4) a broad policy issue may affect the public interest. 20 C.F.R. § 416.1470. On November 3, 2017, the Appeals Council found no basis for review (Tr. 1-3), and the ALJ's November 29, 2016, decision thus became final. McMillan seeks, with this proceeding filed pursuant to § 405g, judicial review of that final, adverse administrative decision.

The parties have filed cross motions for summary judgment (Document Nos. 17 & 18), which have been fully briefed and are ripe for ruling.

III.    **Standard for Review of Agency Decision**

The court's review of a denial of disability benefits is limited "to determining (1) whether substantial evidence supports the Commissioner's decision, and (2) whether the Commissioner's decision comports with relevant legal standards." *Jones v. Apfel*, 174 F.3d 692, 693 (5th Cir. 1999). Indeed, Title 42, Section 405(g) limits judicial review of the Commissioner's decision: "The findings

of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." The Act specifically grants the district court the power to enter judgment, upon the pleadings and transcript, "affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing" when not supported by substantial evidence. 42 U.S.C.§ 405(g). While it is incumbent upon the court to examine the record in its entirety to decide whether the decision is supportable, *Simmons v. Harris*, 602 F.2d 1233, 1236 (5th Cir. 1979), the court may not "reweigh the evidence in the record nor try the issues de novo, nor substitute [its] judgment for that of the [Commissioner] even if the evidence preponderates against the [Commissioner's] decision." *Johnson v. Bowen*, 864 F.2d 340, 343 (5th Cir. 1988); *Jones v. Apfel*, 174 F.3d 692, 693 (5th Cir. 1999); *Cook v. Heckler*, 750 F.2d 391 (5th Cir. 1985). Conflicts in the evidence are for the Commissioner to resolve. *Anthony v. Sullivan*, 954 F.2d 289, 295 (5th Cir. 1992).

The United States Supreme Court has defined "substantial evidence," as used in the Act, to be "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. N.L.R.B.,* 305 U.S. 197, 229 (1938). Substantial evidence is "more than a scintilla and less than a preponderance." *Spellman v. Shalala,* 1 F.3d 357, 360 (5th Cir. 1993). The evidence must create more than "a suspicion of the existence of the fact to be established, but no 'substantial evidence' will be found only where there is a 'conspicuous absence of credible choices' or 'no contrary medical evidence.'" *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983).

## IV.    Burden of Proof

An individual claiming entitlement to disability insurance benefits under the Act has the

burden of proving his disability. *Johnson v. Bowen*, 864 F.2d 340, 344 (5th Cir. 1988). The Act

defines disability as the "inability to engage in any substantial gainful activity by reason of any

medically determinable physical or mental impairment which can be expected to result in death or

which has lasted or can be expected to last for a continuous period of not less than 12 months." 42

U.S.C. § 423(d)(1)(A). The impairment must be proven through medically accepted clinical and

laboratory diagnostic techniques. 42 U.S.C. § 423(d)(3). The impairment must be so severe as to

limit the claimant in the following manner:

> he is not only unable to do his previous work but cannot, considering his age,
> education, and work experience, engage in any other kind of substantial gainful work
> which exists in the national economy, regardless of whether such work exists in the
> immediate area in which he lives, or whether a specific job vacancy exists for him,
> or whether he would be hired if he applied to work.

42 U.S.C. § 423(d)(2)(A). The mere presence of an impairment is not enough to establish that one

is suffering from a disability. Rather, a claimant is disabled only if he is "incapable of engaging in

any substantial gainful activity." *Anthony v. Sullivan*, 954 F.2d 289, 293 (5th Cir. 1992) (quoting

*Milam v. Bowen*, 782 F.2d 1284, 1286 (5th Cir. 1986)).

The Commissioner applies a five-step sequential process to decide disability status:

1.    If the claimant is presently working, a finding of "not disabled" must be made;

2.    If the claimant does not have a "severe impairment" or combination of impairments, he will not be found disabled;

3.    If the claimant has an impairment that meets or equals an impairment listed in Appendix 1 of the Regulations, disability is presumed and benefits are awarded;

4.    If the claimant is capable of performing past relevant work, a finding of "not disabled" must be made; and

5.    If the claimant's impairment prevents him from doing any other substantial gainful activity, taking into consideration his age, education, past work experience and residual functional capacity, he will be found disabled.

*Anthony,* 954 F.2d at 293; *see also Leggett v. Chater,* 67 F.3d 558, 563 n.2 (5th Cir. 1995); *Wren v. Sullivan,* 925 F.2d 123, 125 (5th Cir. 1991). Under this framework, the claimant bears the burden of proof on the first four steps of the analysis to establish that a disability exists. If successful, the burden shifts to the Commissioner, at step five, to show that the claimant can perform other work. *McQueen v. Apfel,* 168 F.3d 152, 154 (5th Cir. 1999). Once the Commissioner shows that other jobs are available, the burden shifts, again, to the claimant to rebut this finding. *Selders v. Sullivan,* 914 F.2d 614, 618 (5th Cir. 1990). If, at any step in the process, the Commissioner determines that the claimant is or is not disabled, the evaluation ends. *Leggett,* 67 F.3d at 563.

Here, the ALJ found at step one that McMillan had not engaged in substantial gainful activity since June 10, 2014, his alleged, amended onset date. At step two, the ALJ determined that McMillan had the following severe impairments: degenerative disc disease of the cervical and lumbar spine; degenerative arthritis of the spine; calcifying tendonitis of the shoulder; depression; and personality disorder with antisocial traits. At step three, the ALJ determined that McMillan did not have an impairment or a combination of impairments that met or equaled a listed impairment, including Listings 12.04 and 12.08. Prior to consideration of steps four and five, the ALJ determined that McMillan had the "residual functional capacity to perform a limited range of light work" with McMillan being able to lift/carry/push/pull 20 pounds, occasionally and 10 pounds, frequently and sit/stand/walk for six hours each in an eight-hour workday[;] . . . would be limited to frequent overhead reaching, frequent crouching, crawling, kneeling, balancing, and climbing of stairs and

ramps[;] . . . could occasionally stoop, but could never climb scaffolding, ropes or ladders[;] . . . [and] [d]ue to moderate limitations in social functioning and concentration, persistence, or pace would be limited to performing detailed, but not complex, work with 3-4 step instructions with only occasional interaction with the public, co-workers, and supervisors." Using that residual functional capacity assessment, the ALJ concluded, at step four, that McMillan could perform his past relevant work as a security guard. In addition, the ALJ alternatively concluded, at step five, using that same residual functional capacity assessment, and relying on the testimony of a vocational expert, that McMillan could also perform the job of security service agent, and that he was, at step four and/or step five, not disabled.

In this appeal, McMillan maintains that the ALJ erred at step two, erred in her consideration of the medical opinion evidence in the record, erred in the RFC determination, and erred and steps four and five in determining that he could perform his past work as a security guard, or work as a security service agent. Having considered ALJ's decision alongside the medical evidence in the record, the Court concludes that the ALJ erred in the step two severity assessment of McMillan's sleep apnea and hearing loss/tinnitus. In addition, the Court concludes that the ALJ's RFC determination is not supported by substantial evidence insofar as no meaningful limitation was included to accommodate for McMillan's left shoulder and cervical impairments.


V.    Discussion

McMillan's medical records are lengthy and his impairments numerous. As found by the ALJ, he has back and neck impairments, a shoulder impairment, and mental impairments – all of which are "severe" within the meaning of *Stone*. As for the non-severe impairments found by the

ALJ, including McMillan's sleep apnea and his hearing loss/tinnitus, not only did the ALJ use an incorrect severity standard, but the ALJ also failed to consider or acknowledge the medical evidence in the record that supported the conclusion that those impairments are "severe" within the meaning of *Stone*.

At step two, the claimant bears the burden of showing that he has a severe impairment or combination of impairments that significantly limits the claimant's physical or mental ability to do basic work activities. The step two requirement that the claimant have a severe impairment is generally considered to be "a de minimis screening device to dispose of groundless claims." *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996) (citing *Bowen v. Yuckert*, 482 U.S. 137, 153-154 (1987)). "[A]n impairment can be considered as not severe only if it is a slight abnormality [having] such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience." *Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985) (quoting *Estran v. Heckler*, 745 F.2d 340, 341 (5th Cir. 1984)).

Under the governing regulations, "If you do not have a *severe* medically determinable physical or mental impairment ... or a combination of impairments that is severe ..., we will find that you are not disabled." 20 C.F.R. § 416.920(a)(4)(ii) (emphasis added). But because the regulations require a claimant to show only "*a* severe" impairment, that is, *one* severe impairment in order to avoid a denial of benefits at step two, the failure to find a particular impairment severe at step two is not reversible in and of itself as long as the ALJ finds that at least one other impairment is severe. However, even if an impairment is found non-severe at step two, the ALJ must still "consider the limiting effects of all [a claimant's] impairment(s), even those that are not severe, in determining [RFC]." 20 C.F.R. §§ 404.1545(e), 416.945(e); *see also* 20 C.F.R. § 404.1523; Social Security

Ruling 96-8p, 1996 WL 374184, at *5; *Loza v. Apfel*, 219 F.3d 378, 393 (5th Cir. 2000) (The ALJ

must "consider the combined effects of all impairments, without regard to whether any such

impairment, if considered separately, would be of sufficient severity.").

Here, the ALJ concluded that McMillan's diabetes mellitus, hypothyroidism, obstructive

sleep apnea, allergic rhinitis, dyslipidemia, folliculitis, dyspepsia, insomnia, diverticulosis, ulnar

neuropathy, and lateral epicondylitis were not severe impairments because they "did not cause more

than a minimal impediment to the claimant's ability to engage in every day work activities." As for

McMillan's tinnitus, the ALJ also found, as follows, that impairment to be not severe:

> I also considered the claimant's medically determinable impairment of tinnitus. On
> review of the record, I noted the claimant's medical history in 2011 indicated the
> claimant had normal hearing in his right ear and mild to moderate hearing loss in his
> left [ear], which was unchanged since 2001 (Exhibit 3F, pages 43-46). I noted there
> was no indication in the record of any further deterioration. I further noted that
> claimant was able to maintain a full time job until well after 2011, and this
> impairment did not adversely impact his ability to perform that job or require special
> accommodations. Moreover, the objective medical record for the period at issue
> demonstrated no difficulties in the claimant's ability to hear any of the treatment
> providers, nor did he demonstrate any hearing difficulties at the hearing. Looking at
> the body of evidence as a whole, I found the claimant's allegations of severity
> regarding his tinnitus were not supported by the objective record. Although there
> was objective testing indicating mild to moderate limitations in his left [ear], the
> record contained no evidence of functional limitations as demonstrated by the
> treatment notes and the claimant's work history. Therefore, I found the claimant's
> tinnitus, considered singly and in combination, did not cause more than a minimal
> impediment to his ability to engage in every day work activities and is, this, non-
> severe.

(Tr. 13).

As argued by McMillan, the ALJ mis-stated and misapplied the severity standard at step two.

An impairment can only be found not "severe" in the Fifth Circuit if it "is a slight abnormality

[having] such minimal effect on the individual that it would not be expected to interfere with the

individual's ability to work, irrespective of age, education or work experience." The ALJ did not

decide that McMillan's sleep apnea and tinnitus were not severe by reference to this standard, and instead found those impairments not severe because they "did not cause more than a minimal impediment to [McMillan's] ability to engage in every day work activities." The ALJ's misstatement and misapplication of the *Stone* severity standard constitutes error.

That error, despite the fact that the ALJ progressed beyond step two, cannot be said to be harmless. The record evidence shows that McMillan's impairments of sleep apnea and hearing loss/tinnitus are "severe" under the *Stone* standard. McMillan's sleep apnea was diagnosed in 2011 after he underwent a sleep study (Tr. 434). He was prescribed a BiPap machine. In 2013, his sleep apnea was re-evaluated and home oxygen therapy was added (Tr. 456-57). In 2014, despite both a BiPap machine and oxygen therapy, McMillan's sleep apnea was described by his physician as "severe obstructive sleep apnea" (Tr. 434-35). McMillan testified at the hearing that despite his use of a BiPap machine and oxygen, he only gets between two and four hours of sleep a night, requiring him to take naps during the day (Tr. 54). As for his hearing loss and tinnitus, the record shows that McMillan has mild to moderately severe conductive hearing loss in his left ear and tinnitus (Tr. 392, 397), which McMillan testified makes it hard for him to concentrate (Tr. 51). This record evidence does not support the ALJ's determination that McMillan's sleep apnea and his tinnitus are not severe within the meaning of *Stone*. Moreover, because the ALJ did not consider, in determining McMillan's RFC, whether those impairments resulted in any functional limitations, *see Loza v. Apfel*, 219 F.3d 378, 393 (5th Cir. 2000)("In determining whether a claimant's physical or mental impairments are of a sufficient medical severity as could be the basis of eligibility under the law, the ALJ is required to consider the combined effects of all impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity. If the ALJ finds a

medically severe combination of impairments, 'the combined impact of the impairments will be considered throughout the disability determination process.'") (internal citations omitted), the ALJ's step two error was not harmless.

In addition, notwithstanding that step two error, the ALJ's RFC is not supported by substantial evidence. In particular, the ALJ's RFC assessment does not even account for all the impairments the ALJ found to be severe. In developing McMillan's RFC, the ALJ limited the amount of weight McMillan can lift/carry/push and pull (20 pounds occasionally and 10 pounds frequently), but did not limit McMillan's ability to reach overhead – finding that he could do so "frequently." That determination – that McMillan can do "frequent overhead reaching" – is contrary to the objective medical evidence in the record, as well as expert medical opinions in the record. Most of the medical evidence in the record is from McMillan's treatment at VA [Veteran's Administration] medical centers. It is there McMillan was diagnosed with a left shoulder impairment (left shoulder calcific bursitis or peritendinitis of supraspinatus tendon), and he was assessed an 80% VA disability rating. While the ALJ, in rejecting the VA disability *rating*, is correct that such ratings are not binding for purposes of social security disability, the ALJ should have, at the least, considered the objective medical findings upon which the VA disability ratings were based. That means, for purposes of this appeal, that the ALJ should have considered and discussed the medical evidence and expert medical opinions related to McMillan's neck and shoulder impairments, and should have made some accommodation, in McMillan's RFC, for those impairments.

The objective medical evidence contained in the Shoulder and Arm Questionnaire (Tr. 374-389), completed by Dr. Sharon Oday at the VA on March 29, 2012, reveals a left shoulder diagnosis of "left shoulder calcific bursitis or peritendinitis of supraspinatus tendon," accompanied findings

of left shoulder flexion of 135 degrees, left shoulder abduction of 110 degrees, less movement, weakened movement and painful movement in the left shoulder, and diminished muscle strength (4/5) on left shoulder abduction and flexion. In addition, that Questionnaire makes note of positive Hawkins' Impingement Test, Empty-can test, lift-off subscapularis test, crank apprehension and relocation test, and cross-body abduction test. As for McMillan's cervical impairment, the medical evidence from the VA shows that McMillan had reduced range of motion in his cervical spine in 2011, on forward flexion, extension backwards, lateral flexion and lateral rotation (Tr. 1279). McMillan's complaints of neck pain and treatment therefor are documented in the VA records in 2012 (Tr. 1282) and 2013 (Tr. 461). The objective medical evidence in the record does not support, and is contrary to, the ALJ's determination that McMillan retains the ability to do "frequent overhead reaching."

In addition, the expert opinion evidence in the record does not support the ALJ's determination that McMillan can do "frequent overhead reaching." In addition to Dr. Oday's findings in March 2012 relative to McMillan's shoulder impairment, a consultative internal medicine evaluation was done by Dr. Nalini M. Dave on April 17, 2015. The contents of that evaluation also do not support the ALJ's determination that McMillan can do "frequent overhead reaching." Dr. Dave found that McMillan "had [a] hard time getting on and off the examination table," a "hard time dressing and undressing for the exam," he "could not hop. He could not squat. He could not tandem walk. . . . He was able to remove his boots, but taking [off] the socks was a big chore for him. He seemed to be in pain with any movement. He could sit and stand, but moving about and hence lifting, carrying, and handling objects was difficult. He could not pick up a pencil, but he could button his clothes." (Tr. 778). With respect to his physical examination of McMillan, Dr. Dave

found that his neck was "not supple," the "range of motion of [the] C-spine [was] reduced significantly," with "barely 10% flexion, zero extension, 10% lateral flexion and zero rotation," with McMillan being in "extreme pain even trying to do that." "Making a tight fist on the right hand also cause[d] him to have neck pain. The range of motion of [the] lumbar spine [was] decreased by 75%." (Tr. 778). Functionally, Dr. Dave stated that McMillan's "range of motion of [his] lumbar spine is decreased by 50%. He can sit, stand, move about slowly, cannot lift more than [a] few pounds because of neck and back pain. He can carry up to 5 pounds, handle objects, hear and speak." (Tr. 778). These findings do not support the ALJ's determination that McMillan can do "frequent overhead reaching." The ALJ did discount, and give little weight, to the opinions of Dr. Dave, which was within the ALJ's province to do, but the ALJ also seemed to reject, without any basis, the objective findings made by Dr. Dave about McMillan's range of motion in both his lumbar and cervical spine. Those objective findings, along with the findings made by the VA in connection with the March 29, 2013 VA Shoulder and Arm Questionnaire, do not support the ALJ's determination that McMillan can do "frequent overhead reaching."

Because the ALJ erred at step two in determining that McMillan's sleep apnea and his hearing loss/tinnitus were not severe and in failing to consider any limitations associated therewith in the RFC determination, and because the ALJ's RFC determination that McMillan can do "frequent overhead reaching" is not supported by substantial evidence, this case must be remanded for further consideration at step two and for re-evaluation of McMillan's RFC.

## VI.  Conclusion and Order

Based on the foregoing, and the conclusion that the ALJ erred at step two, and that substantial evidence does not support the ALJ's RFC determination, it is

ORDERED that Plaintiff's Motion for Summary Judgment (Document No. 17) is GRANTED, Defendant's Motion for Summary Judgment (Document No. 18) is DENIED, and this case is REMANDED to the Social Security Administration pursuant to 42 U.S.C. § 405g, for further proceedings consistent with this opinion.

Signed at Houston, Texas, this 20ᵗʰ day of September, 2019.

FRANCES H. STACY
UNITED STATES MAGISTRATE JUDGE